INTERNATIONAL CHAMBER OF COMMERCE (ICC)
INTERNATIONAL COURT OF ARBITRATION
ICC ARBITRATION CASE 25158/JPA

**IN THE MATTER OF AN ARBITRATION**

between:

**Jack Landsmanas Stern (Mexico),**
Claimant
and

**Carlos Javier Molina Gil (Mexico),**
and
**TGV GONE LTD. (Bahamas),**
Respondents.

---

**FINAL AWARD**

---

Dated March 19, 2021

Final Award
ICC Arbitration Case 25158/JPA

## TABLE OF CONTENTS

I.      TABLE OF DEFINITIONS ................................................................................. 1

II.     PARTIES ........................................................................................................ 3

III.    THE ARBITRATOR ........................................................................................ 4

IV.     ARBITRATION AGREEMENT ........................................................................... 4

V.      GOVERNING LAW ......................................................................................... 4

VI.     PLACE OF ARBITRATION ............................................................................... 4

VII.    ARBITRATION RULES .................................................................................... 4

VIII.   PROCEDURAL HISTORY ................................................................................. 5

IX.     SUMMARY OF CLAIMANT'S CLAIMS .............................................................. 8

X.      SUMMARY OF RESPONDENTS' POSITION ..................................................... 13

XI.     THE ARBITRATOR'S REASONING ................................................................. 14

        A.      Jurisdiction ................................................................................. 14
        B.      Whether Respondents Breached the Loan Agreement ......................... 15
        C.      Whether the Loan Under the Loan Agreement Is Due and Owing to
                Claimant ...................................................................................... 17
        D.      The Swiss Arbitration .................................................................... 18

XII.    COSTS ......................................................................................................... 19

XIII.   DISPOSITION ............................................................................................... 21

Final Award
ICC Arbitration Case 25158/JPA

## I. TABLE OF DEFINITIONS

| | |
|---|---|
| Acknowledgement of Debt Agreement | Acknowledgement of debt agreement entered into on January 4, 2018 between Claimant and Mr. Molina Gil |
| Arbitration | Case as 25158/JPA between Claimant and Respondents |
| Arbitrator | Sole arbitrator Ms. Silvia M. Marchili directly appointed by the ICC Court on June 11, 2020 under Article 13(4)(c) of the ICC Rules |
| Cadogan | Cadogan Swiss Trust Co AG |
| Claimant | Mr. Jack Landsmanas Stern |
| ICC Court | International Court of Arbitration of the International Chamber of Commerce |
| ICC Rules | ICC Arbitration Rules in force as of March 1, 2017 |
| ICC Secretariat | Secretariat of the International Court of Arbitration |
| IPG Loan Agreement | Loan agreement entered into between Claimant and IPG Securities of November 9, 2016 |
| IPG Securities | IPG Securities Asset Management SA |
| Loan Agreement | Loan agreement entered into by the Claimant and Respondents on July 15, 2019 |
| Mexico Arbitration | ICC Case 25159/JPA |
| PIBL | Private Investment Bank Limited |
| Request for Arbitration | Request for Arbitration by Claimant against Respondents dated On February 24, 2020 |
| Respondent I | Mr. Carlos Javier Molina Gil |
| Respondent II | TGV GONE LTD |
| Respondents | Respondent I and Respondent II |
| Swiss Arbitration | Arbitration proceeding styled *Mr. Jack Landsmanas Stern v. IPG Securities Asset Management SA*, Case Number 300509-2020 before |

Final Award
ICC Arbitration Case 25158/JPA

| | |
|---|---|
| | the Swiss Chambers' Arbitration Institution and under the IPG Loan Agreement |
| Terms of Reference | Terms of Reference executed by the Parties and the Arbitrator effective as of August 19, 2020 |
| TGV | TGV GONE LTD |

Final Award
ICC Arbitration Case 25158/JPA

## II.   PARTIES

1.     The Claimant is Mr. Jack Landsmanas Stern whose address and contact details are:

Av. Lomas de Sotelo 1094, piso 3
Col. Loma Hermosa
Del. Miguel Hidalgo, México, D.F
C.P. 11200
Tel.:   +52 55 2282 2600
Email:  jack.landsmanas@ck.com.mx
        jorge.stepensky@ck.com.mx

2.     Counsel to the Claimant:

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Gabriel Hertzberg
Samuel Ballard
101 Park Avenue
New York, NY 10178
Tel.: +1 212 696 6000
Email: ghertzberg@curtis.com
       sballard@curtis.com

CURTIS, MALLET-PREVOST, COLT & MOSLE S.C.
Javier Jiménez
Ricardo Mier y Teran
Rubén Darío 281 - Piso 9
Colonia Bosque de Chapultepec
11580 Ciudad de México
Tel.:  +52 55 5282 1100
Email: jjiminez@curtis.com
       rmieryteran@curtis.com

3.     The address and contact details for Mr. Carlos Javier Molina Gil ("Respondent I," or "Mr. Molina Gil") and TGV GONE LTD. ("Respondent II" or "TGV,", and together with Respondent I, the "Respondents") are:

365 West End Ave. 2A, New York, NY
Email:  carlosjmolina@yahoo.com

4.     Respondents did not present any external legal counsel.

3

Final Award
ICC Arbitration Case 25158/JPA

## III.   THE ARBITRATOR

5.    The Arbitrator is Silvia M. Marchili and her contact details are:

White & Case LLP
609 Main St Suite 2900
Houston, TX 77002
Tel: +1 713 496 9728
E-mail: silvia.marchili@whitecase.com

## IV.   ARBITRATION AGREEMENT

6.    The present dispute arises out of a loan agreement entered into by the Claimant and Respondents on July 15, 2019 (the "Loan Agreement").   Article 9.2 of the Loan Agreement provides:

> All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules.  The place of Arbitration shall be New York, New York.  The proceedings shall be held in English.  The applicable laws shall be those stated in Article 9.1 above.[1]

## V.   GOVERNING LAW

7.    In accordance with Article 9.1 of the Loan Agreement, the latter is "governed by the laws of the State of New York."

## VI.   PLACE OF ARBITRATION

8.    Article 9.2 of the Loan Agreement provides that the place of arbitration is New York, New York.

## VII.   ARBITRATION RULES

9.    Pursuant to Article 19 of the ICC Arbitration Rules, ICC Arbitration Rules in force as of March 1, 2017 (the "ICC Rules") govern the proceeding.

---

[1]    Loan Agreement between Jack Landsmanas Stern, TGV Gone Ltd., and Carlos Javier Molina Gil dated July 15, 2019 (the "Loan Agreement"), **Exhibit C-14**.

4

Final Award
ICC Arbitration Case 25158/JPA

10.     In addition, under paragraph 59 of the executed by the Parties and the Arbitrator effective as of August 19, 2020 ("Terms of Reference") in the present case, the Parties agreed that the following guidelines are applicable:

> (i)  the International Bar Association's Rules on the Taking of Evidence in International Commercial Arbitration (as adopted by a resolution of the IBA Council on May 29, 2010); and
>
> (ii) the International Bar Association's Guidelines on Party Representation in International Arbitration (2013).

## VIII.  PROCEDURAL HISTORY

11.     On February 24, 2020, the Claimant filed a Request for Arbitration against Respondents for breach of the Loan Agreement (the "Request for Arbitration").

12.     By correspondence dated March 12, 2020, the Secretariat of the International Court of Arbitration (the "ICC Secretariat") registered the case as 25158/JPA (the "Arbitration") and informed Respondents that the Answer to the Request for Arbitration was due within 30 days.

13.     On the other hand, on February 24, 2020, the Claimant also filed a request for arbitration against Mr. Molina Gil, but not TGV. That dispute involves an alleged breach of an acknowledgement of debt agreement entered into on January 4, 2018 between Claimant and Mr. Molina Gil (the "Acknowledgement of Debt Agreement").[2]  On March 12, 2020, the ICC Secretariat registered that arbitration as case number 25159/JPA (the "Mexico Arbitration"). As Section IX explains, the present Arbitration and the Mexico Arbitration are closely related.

14.     By correspondence dated April 24, 2020, the ICC Secretariat confirmed that Mr. Molina Gil had been served with the Request for Arbitration on March 13, 2020. Based on the information that Claimant provided regarding the fact that Mr. Molina Gil (i) owns the entire issued share capital of TGV, (ii) is the President of TGV, (iii) is the sole Director of TGV, and (iv) is the beneficial owner of TGV, the ICC Secretariat further confirmed that "according to Claimant's correspondence dated 21 April 2020 . . . Respondent 2 [TGV] shall be deemed to have been duly notified on 13 March 2020." The ICC Secretariat also noted that the 30-day deadline for Respondents to submit an Answer to the Request for Arbitration had expired on April 14, 2020, without either of them submitting such an answer.

---

[2]     Acknowledgement of Debt Agreement between Claimant and Mr. Molina Gil dated January 4, 2018 (the "Acknowledgement of Debt Agreement"), **Exhibit C-12**.

5

Final Award
ICC Arbitration Case 25158/JPA

15.    On May 14, 2020, the International Court of Arbitration of the International Chamber of Commerce ("ICC Court") decided to submit the arbitration to a sole arbitrator pursuant to Article 12(2) of the ICC Rules and fixed the advance on costs at US$ 100 000.

16.    On June 11, 2020, the ICC Court directly appointed as sole arbitrator Ms. Silvia M. Marchili under Article 13(4)(c) of the ICC Rules.  The ICC Court also appointed the Arbitrator to act as sole arbitration in the Mexico Arbitration.

17.    On June 12, 2020, the ICC Secretariat transmitted the file of case 25158/JPA to the Arbitrator and indicated, among other things, that this matter was not referred to the ICC Court and that the Arbitrator must decide any question of jurisdiction or of whether the claims may be determined together in a single arbitration, in accordance with Article 6(3) of the ICC Rules.

18.    On June 25, 2020, the Claimant, Mr. Molina Gil, on behalf of Respondents, and the Arbitrator held a Case Management Conference by video conference.

19.    On July 6, 2020, Mr. Molina Gil sent a letter to the Arbitrator stating as follows:

> Even if I were able to afford engaging counsel in this Matter, it would only be with the purpose of delaying a resolution.  I cannot, in good conscious [*sic*], allow the Claimant to incur unnecessary legal expenses in a case where all his claims are accurate and valid.[3]

20.    The Parties discussed the possibility of consolidating this Arbitration and the Mexico Arbitration.  Having reached an agreement in principle, Mr. Molina Gil advised on July 14, 2020 "[w]hile I had accepted the proposed consolidation of the cases and had communicated not disputing the claims, there has been a turn of events that needs to be addressed."[4]  He added: "I was just notified a couple of days ago that IPG Securities Asset Management S.A. received arbitration notification in our office in Geneva," and that "[t]hese claims overlap with the ones brought up in this arbitration; hence, I cannot longer accept consolidation and/or full agreements of the claims until this is clarified."[5]

21.    On July 15, 2020, Claimant alleged that the foregoing should not affect consolidation; that Claimant had filed a Notice of Arbitration on June 16, 2020 against IPG Securities Asset Management SA ("IPG Securities") alleging a failure to comply with its payment obligations under a loan agreement entered into between Claimant and IPG Securities of November 9, 2016 ("IPG Loan Agreement").  Claimant further argued that in accordance with the terms of the IPG Loan Agreement, the arbitration against IPG Securities is administered by the

---

[3]    Letter from Molina Gil to the Arbitrator dated July 6, 2020.

[4]    E-mail from Respondents to the Arbitrator dated July 14, 2020, **Exhibit C-27**.

[5]    E-mail from Respondents to the Arbitrator dated July 14, 2020, **Exhibit C-27**.

Final Award
ICC Arbitration Case 25158/JPA

Swiss Chambers' Arbitration Institution, subject to Swiss law, seated in Zurich and a three-member tribunal panel would decide it (the "Swiss Arbitration"). Section XI.C explains the relationship between this Arbitration and the Swiss Arbitration.

22.    Ultimately, the Parties did not agree to consolidate this Arbitration and the Mexico Arbitration, and, therefore, they were not consolidated.

23.    On August 12, 2020, after receiving comments from the Parties, the Arbitrator set the Procedural Calendar for the Arbitration. As the Parties agreed, the Procedural Calendar applied *mutatis mutandis* to the Mexico Arbitration.[6]

24.    The Parties and the Arbitrator executed the Terms of Reference, which are effective as of August 19, 2020. Under the Terms of Reference, the Parties confirmed, *inter alia*, that the Arbitrator was appointed properly and validly and no Party had any grounds for objecting to the appointment and confirmation of the Arbitrator.

25.    Subsequently:

> (i) Claimant delivered its Memorial on September 14, 2020, with Exhibits and Legal Authorities.
>
> (ii) Respondents did not deliver their Counter-Memorial by October 5, 2020, the deadline established in the Procedural Calendar.
>
> (iii) On 16 October 2020, the Claimant sent a letter to the arbitrator noting that the Respondent did not file the Counter-Memorial within the time limit.
>
> (iv) Claimant delivered its Reply Memorial on October 26, 2020.
>
> (v) Respondents did not deliver their Rejoinder by November 16, 2020, the deadline established in the Procedural Calendar.[7]

26.    On November 19, 2020, the ICC Court decreased the advance on costs from US$ 100,000 to US$ 75,000.[8]

27.    On November 25, 2020, Claimant sent a letter to the Arbitrator noting that the Respondents did not deliver their Rejoinder within the deadline set forth in the Procedural

---

[6]    Email from the Arbitrator to the Parties dated August 9, 2020.

[7]    *See* Letter from Claimant to the Arbitrator dated November 25, 2020.

[8]    Letter from the ICC Secretariat to the Parties dated November 19, 2020.

Final Award
ICC Arbitration Case 25158/JPA

Calendar, and contending that "Respondents have acknowledged that Claimant's 'claims are accurate and valid'" and that "[u]nder these circumstances, there is no need to hold a hearing."

28.     The Arbitrator invited the Respondents to submit any comments regarding Claimant's letter dated November 25, 2020, by December 11, 2020, which they did not do.

29.     On December 26, 2020, the Arbitrator sent a communication advising that no request for a hearing had been made and a hearing was not needed.  In addition, the Arbitrator invited simultaneous comments by January 5, 2020 with respect to (i) the status of the Swiss Arbitration, and its relevance to this proceeding, if any; (ii) the applicable standard for breach of contract under New York law; (iii) grounds for joint and several liability under New York law; and (iv) updated interest and costs calculations, if any, together with a description of the calculation method.

30.     On January 4, 2021, the Arbitrator added that each party could submit comments regarding the other Party's observations by January 12, 2021.

31.     Respondents provided comments on January 4, 2021 and Claimant provided comments on January 5, 2021.  On January 11, 2021, Respondents confirmed that they did not have any comments related to Claimant's communication of January 5, 2021.   On January 12, 2021, Claimant confirmed that it did not have any comments related to Respondents' communication of January 4, 2021.

32.     By email dated March 16, 2021, the Arbitrator advised the Parties and the ICC that the proceedings were closed for the purposes of Article 27 of the ICC Rules.

## IX.   SUMMARY OF CLAIMANT'S CLAIMS

33.     This arbitration relates to the nonpayment by Respondents of a total of US$2,200,000 (two million two hundred thousand United States Dollars) under the terms of the Loan Agreement, as described below.

34.     The following paragraphs describe the facts and legal arguments presented by the Claimant.[9]

35.     Claimant is one of the main shareholders and the general director of a significant Mexican business operating in the food industry in Mexico.  According to Claimant, Respondent Carlos Javier Molina Gil is a financial advisor, and a shareholder of, and provides his services

---

[9]     *See generally* Notice of Arbitration ¶¶ 8-31; Claimant's Memorial dated September 14, 2020 ("Memorial") ¶¶ 4 *et seq*; *see also* Claimant's Reply Memorial dated October 26, 2020 ("Reply").

Final Award
ICC Arbitration Case 25158/JPA

through IPG Securities.[10]  In turn, according to Claimant, Respondent II or TGV is a company incorporated under the laws of The Bahamas and is owned and administered by Mr. Molina Gil.[11]

36.     Claimant asserts that Mr. Molina Gil approached Claimant in 2016 with a proposal to form part of a small group of investors who would acquire the Private Investment Bank Limited ("PIBL"), a Bahamian bank.  Mr. Molina Gil proposed that the acquisition be made through a company named IXE Capital AG.  Claimant and Mr. Molina Gil entered into the IPG Loan Agreement, pursuant to which Claimant agreed to invest CHF 3,750,000 (three million, seven hundred and fifty thousand Swiss Francs) in the transaction related to the acquisition of PIBL.[12]

37.     According to Claimant, less than a year after executing the IPG Loan Agreement, Claimant began to have serious doubts about the viability of the transaction, and contacted Mr. Molina Gil to withdraw from it.[13]  In that context, Claimant exercised his right under the IPG Loan Agreement to demand repayment of the CHF 3,750,000 (three million seven hundred and fifty thousand Swiss Francs) he had loaned.  By the end of 2017, IPG Securities had reimbursed US$1,550,000 (one million five hundred and fifty thousand United States Dollars) to Claimant. However, IPG Securities did not pay the remaining US$ $2,150,000 (two million one hundred and fifty thousand United States Dollars) when they were due under the IPG Loan Agreement.[14]

38.     Thereafter, Mr. Molina Gil personally guaranteed part of the debt that IPG Securities owed to Claimant under the IPG Loan Agreement.  On January 4, 2018, Claimant and Mr. Molina Gil entered into the Acknowledgement of Debt Agreement, by which Mr. Molina Gil personally "expressly acknowledge[d] as owing to the [Claimant], the total sum of US$1,425,000.00 (one million four hundred and twenty five thousand United States Dollars)" and that "he was obligated to settle the full amount owing to the [Claimant], such amount being correct, legitimate and deriving from loans, receipt of which are acknowledged."[15]  Mr. Molina Gil had "24 months from the date of signing the [Acknowledgement of Debt Agreement]" to repay the total amount acknowledged (i.e., by January 5, 2020).  Mr. Molina Gil has still not paid any of the amounts owed to Claimant under the Acknowledgement of Debt Agreement.[16]  As explained in Section VIII, the Claimant has submitted claims related to the alleged breach of the Acknowledgement of Debt Agreement in the Mexico Arbitration.

39.     However, the commercial and contractual relationship between Mr. Landsmanas Stern and Mr. Molina Gil did not conclude with the Acknowledgement of Debt Agreement.  On

---

[10]   See, e.g., Request for Arbitration ¶¶ 3, 8-9.
[11]   See, e.g., Request for Arbitration ¶ 7.
[12]   See, e.g., Memorial ¶¶ 4-6.
[13]   Request for Arbitration ¶ 15.
[14]   Request for Arbitration ¶ 17.
[15]   Request for Arbitration ¶¶ 18-19; Acknowledgement of Debt Agreement, **Exhibit C-12**.
[16]   Memorial ¶ 6.

9

Final Award
ICC Arbitration Case 25158/JPA

July 15, 2019, they signed, together with Mr. Molina Gil's company, a new contract also related to PIBL. Claimant explains that in April 2018, Mr. Molina Gil, through his company IPG Securities, had finally acquired PIBL, a transaction in which Mr. Landsmanas Stern did not participate. However, according to Claimant, after having acquired PIBL, Mr. Molina Gil again approached Claimant for "urgent" funding in connection with PIBL's operation in the summer of 2019. According to Claimant, Mr. Molina Gil's successful acquisition of PIBL restored Claimant's confidence in both Mr. Molina Gil and the viability of the transaction that Claimant had proposed almost three years earlier. In that context, Claimant agreed to make an investment through a loan.[17] Thus, on July 15, 2019, Claimant entered into the Loan Agreement, pursuant to which he agreed to loan US$2,200,000 (two million two hundred thousand United States Dollars) to TGV, as principal debtor, and with Mr. Molina Gil as sole guarantor.[18]

40.     A close relationship, thus, exists between the Arbitration and the Mexico Arbitration:

    (i)    **Parties**: Both the Arbitration and the Mexico Arbitration involve Mr. Landsmanas Stern as Claimant and Mr. Molina Gil as Respondent. However, the Mexico Arbitration does not include TGV as Respondent, as is the case here.

    (ii)    **Underlying Business Relationship**: The contracts covered by the Arbitration and the Mexico Arbitration involve to the same business relationship. Indeed, the Acknowledgement of Debt Agreement which forms the basis for the Mexico Arbitration recognizes a loan that Mr. Landsmanas Stern had granted for the acquisition of the PIBL bank. The contract on which this Arbitration is based (the Loan Agreement) relates to a loan for the development of certain technology to be used in the operation of PIBL, which Mr. Molina Gil had finally managed to acquire.

41.     In turn, the Mexico Arbitration has an even closer link (in fact, a significant overlap) with the Swiss Arbitration. In the latter, the Claimant submitted claims for an unpaid balance of US $ 2,150,000 owed under the IPG Loan Agreement.

42.     This diagram summarizes the relationship between the different contracts entered into by the Parties and the different arbitrations that have been initiated:

---

[17]     Request for Arbitration ¶¶ 23-24.
[18]     Request for Arbitration ¶ 24.

10

Final Award
ICC Arbitration Case 25158/JPA

|  | IPG Loan Agreement November 9, 2016 | Acknowledgement of Debt Agreement January 4, 2018 | Loan Agreement July 15, 2019 |
|---|---|---|---|
| Parties | • Mr. Landsmanas Stern<br><br>• TGV | • Mr. Landsmanas Stern<br><br>• Mr. Molina Gil | • Mr. Landsmanas Stern<br><br>• Mr. Molina Gil<br><br>• TGV |
| Amount | Swiss Francs 3,750,000 | US$1,425,000 (Part of the US$2.150.000 owed under the IPG Loan Agreement) | US$2,200,000 |
| Unpaid Amount | US$2,150,000 | US$1,425,000 | US$2,200,000 |
| Arbitration | Swiss Arbitration | Mexico Arbitration | This Arbitration |

43.     Section IX.C explains the overlap, if any, between the Swiss Arbitration and this Arbitration, as well as its consequences.

44.     According to Claimant, his investment under the Loan Agreement was conditioned on an investment by Cadogan Swiss Trust Co AG ("Cadogan"), an investment fund, of US$3,600,000 (three million six hundred thousand United States Dollars) in PIBL on or before September 30, 2019. If Cadogan failed to make this contribution, the amount that Claimant loaned under the Loan Agreement would be due and payable within 90 days following that deadline (*i.e.*, by December 29, 2019).[19]

45.     The Claimant asserts that Cadogan failed to make this contribution. As such, on October 29, 2019, Claimant informed Respondents that the condition under the Loan Agreement had been triggered and, accordingly, repayment of the Loan Agreement was due on or before

---

[19]   Memorial ¶ 11.

Final Award
ICC Arbitration Case 25158/JPA

December 29, 2019. Neither TGV, nor Mr. Molina Gil (as guarantor) have repaid the owed amount under the Loan Agreement.[20]

46.     Claimant argues that Respondents have failed to pay a debt owing under Loan Agreement, which Respondents were required to pay by December 29, 2019.[21]   According to Claimant, the debt corresponds to US$2,200,000 (two million two hundred thousand United States Dollars), plus accumulated interest, as set out in Articles 1, 5, and 6 of the Loan Agreement.[22]

47.     Claimant asserts that to make out a claim for breach of contract in New York, a claimant must plead that (i) a contract existed; (ii) that he performed his obligations under the contract; (iii) that the other party or parties to the contract did not perform their obligations under the contract; and (iv) that the claimant was injured as a result.  Claimant argues that each of these elements is satisfied in the present case.[23]

48.     With respect to the first element, Claimant asserts that a valid contract existed because the Loan Agreement (i) was entered into by two or more parties with legal capacity to contract; (ii) the parties had mutually assented to the terms; and (iii) consideration was exchanged, among other things, by funding the loan in exchange for a promise to pay.[24]  With respect to the second element, Claimant asserts that it performed its obligations under the Loan Agreement by wiring the funds to Respondents.[25]  With respect to the third element, Claimant argues that Respondents did not perform their obligations under Article 4.2 of the Loan Agreement, which required Respondents to pay the debt by December 29, 2019, or 90 days after Cadogan failed to make the investment required under the Loan Agreement.[26]  With respect to the fourth element, Claimant states that the Respondents' breach has injured him, because Respondents have not repaid with interest the amounts loaned to Respondent.[27]

49.     Based on the foregoing, Claimant's prayer of relief, as stated in the Terms of Reference, is as follows:

> Claimant seeks an award in which it is stated that (a) the Loan Agreement is in default and the loan is due and owing to Claimant; (b) Respondents are order to pay Claimant US$2,200,000 (two million two hundred thousand United States Dollars) plus 5% interest per annum;

---

[20]   Memorial ¶ 12.

[21]   Memorial ¶ 13.

[22]   Memorial ¶ 13.

[23]   Memorial ¶ 14 (citing *Morris v. 702 E. Fifth St. HDFC*, 46 A.D.3d 478, 479 (1st Dept. 2007), **CLA-1**).

[24]   Memorial ¶ 15 (citing *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (1st Dept. 2009), **CLA-2**).

[25]   Memorial ¶ 16.

[26]   Memorial ¶ 17.

[27]   Memorial ¶ 18.

12

Final Award
ICC Arbitration Case 25158/JPA

and (c) Respondents are ordered to pay all administrative costs and legal fees of Claimant in connection with this arbitration proceeding.[28]

50.    Subsequently, in its Memorial, Claimant requested an award in the following terms:

(i) Ordering each of the Respondents, jointly and severally, to pay Claimant US$2,200,000 (two million two hundred thousand United States Dollars) plus 5% interest per annum, accrued quarterly from July 15, 2019 to the January 3, 2020, and 15% interest per annum, accrued quarterly from January 4, 2020 to present; and

(ii) Ordering each of the Respondents, jointly and severally, to pay all costs incurred by the Claimant in connection with this Arbitration, as provided in ICC Rules Article 38(1).[29]

51.    Lastly, in its Reply, Claimant requested that the Arbitrator:

(i) Close the proceedings and issue an award granting the relief specified herein;

(ii) Issue an award ordering each of the Respondents, jointly and severally, to pay Claimant (i) US$2,200,000 (two million two hundred thousand United States Dollars) plus 5% interest per annum, accrued quarterly from July 15, 2019 to January 3, 2020, and 15% interest per annum, accrued quarterly from January 4, 2020 to the date on which the award is paid; and (ii) all costs incurred by Claimant in connection with this Arbitration, including legal fees, with New York statutory interest of 9% (CPLR § 5004) accruing upon that portion of the award.[30]

## X.    SUMMARY OF RESPONDENTS' POSITION

52.    The following summarizes Respondents' position, as confirmed in the Terms of Reference that Mr. Molina Gil executed and signed on behalf of both Respondents.[31]

53.    By communication dated July 6, 2020, Respondents stated as follows:

I am writing here today again in my personal capacity and without legal representation.  Furthermore, this letter is not a formal response to the arbitration procedure since, in my opinion, an arbitration should take place when there is a disagreement in claims, but this is not the case.

---

[28]    Terms of Reference ¶ 51.
[29]    Claimant's Memorial ¶ 28.
[30]    Reply ¶ 9.
[31]    Terms of Reference ¶¶ 8, 52-53, page 10.

Final Award
ICC Arbitration Case 25158/JPA

> Even if I were able to afford engaging counsel in this matter, it would only be with the purpose of delaying a resolution. I cannot, in good conscious [*sic*], allow the Claimant to incur unnecessary legal expenses in a case where all his claims are accurate and valid.
>
> As you must understand, even if I would like to elaborate on my current situation and the circumstances leading to the total collapse of my business, my bank and professional career, I should not do so in writing and without legal representation.
>
> At this moment, I cannot afford attorneys and even less the costs of this arbitration. Having said that, I will appreciate if you can please advice what would be the next steps in this matter, given my current situation and my willingness to recognize the validity of the claims.[32]

54.     Moreover, on July 14, 2020, as previously mentioned, Respondents sent a communication withdrawing consent to consolidate the Mexico Arbitration with the present case:

> While I had accepted the proposed consolidation of the cases and had communicated not disputing the claims, there has been a turn of events that needs to be addressed. I was just notified a couple of days ago that IPG Securities Asset Management SA received arbitration notification in our office in Geneva (partial documents attached). These claims overlap with the ones brought up in this arbitration; hence, I cannot longer accept consolidation and/or full agreements of the claims until this is clarified.[33]

## XI.     THE ARBITRATOR'S REASONING

### A.     Jurisdiction

55.     Article 9.2 of the Loan Agreement provides:

> All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The place of Arbitration shall be New York, New York. The proceedings shall be held in English. The applicable laws shall be those stated in Article 9.1 above.[34]

---

[32]   Letter from Molina Gil to the Arbitrator dated July 6, 2020.

[33]   E-mail from Respondents to the Arbitrator dated July 14, 2020, **Exhibit C-27**.

[34]   Loan Agreement, **Exhibit C-14**.

14

Final Award
ICC Arbitration Case 25158/JPA

56.     The Parties did not present any objections to jurisdiction of the Arbitrator.

57.     Notwithstanding the lack of questioning, the Arbitrator finds that it has jurisdiction over this dispute pursuant to Article 9.2 of the Loan Agreement and the ICC Rules. First, the present dispute "arises out of or in connection with" the Loan Agreement because the claims allege a breach of its terms. Second, the Arbitration was established in accordance with Article 9.2 of the Loan Agreement. Specifically, (i) the Arbitration is governed by the ICC Rules; (ii) the Arbitrator was appointed pursuant to the ICC Rules; (iii) the place of arbitration is New York; (iv) the proceedings were held in English; and (v) the applicable laws are those of the State of New York, as stated in Article 9.1 of the Loan Agreement.

**B.      Whether Respondents Breached the Loan Agreement**

58.     Based on the information and evidence before the Arbitrator, the Loan Agreement has been breached. Respondents have not contested the validity of the Loan Agreement that they signed[35] or the existence of an unpaid amount of US$ 2,200,000.00.[36] Similarly, Respondents have not questioned that Claimant has suffered an injury because of the failure to pay the aforementioned amount.

59.     In particular, the Loan Agreement defines the Loan as a loan of US$ 2,200,000.00 that "the Borrower [*i.e.*, TGV Gone Ltd.] agrees to borrow and hereby borrows from the Lender [*i.e.*, Claimant]."[37] Pursuant to the Loan Agreement, the Loan "shall bear 5% interest per annum" to be "accrued quarterly" from when Claimant made the funds available until reimbursement.[38]

60.     The Loan Agreement sets forth the terms for reimbursement. Specifically, Article 4.2 provides:

> Should (i) the Final Transaction not occur by December 15, 2019, then the Loan becomes payable in full 90 days after December 15, 2019, or (ii) if Cadogan Swiss Trust & CO AG, Zürich, Switzerland ("Cadogan") does not pay, for any reason, an amount of at least USD 3,600,000.00 based on a certain agreement between IPG BH and Cadogan by September 30, 2019 or after Borrower or other affiliates or Guarantor become privy to information that Cadogan will not pay said amount by said date, whichever is the earlier, then the Loan becomes payable in full 90 days after such date.[39]

---

[35]   Loan Agreement, **Exhibit C-14**; *see also* Terms of Reference ¶¶ 8, 52-53, page 10.

[36]   *See* Wire Transfer Confirmation dated July 15, 2019, **Exhibit C-15**; *see also* Terms of Reference ¶¶ 8, 52-53, page 10.

[37]   Loan Agreement, Article 1.1, **Exhibit C-14**.

[38]   Loan Agreement, Articles 5.1-5.2, **Exhibit C-14**.

[39]   Loan Agreement, Article 4.2, **Exhibit C-14**.

Final Award
ICC Arbitration Case 25158/JPA

61.     The Loan Agreement defines "Event of Default" as follows:

> In the event the Borrower fails to provide the Lender with full payment
> and discharge of the Loan and accrued interest when due and after the
> Borrower has been notified in writing and granted an additional five (5)
> business days to execute such payment and discharge, then in any such
> event Borrower shall be in an event of default situation (hereafter:
> "Event of Default").[40]

62.     Pursuant to Article 6.2 of the Loan Agreement, an Event of Default triggers an additional interest for as long as it continues:

> Upon occurrence of the Event of Default and for so long as the Event
> of Default continues, an additional interest of 10% per annum will be
> due on the Loan and the Lender will have the choice to either (i) initiate
> legal proceedings against the Borrower or (ii) enforce other guarantees
> available by law or by contract at the same time.[41]

63.     On October 29, 2019, Claimant informed Respondents that, because Cadogan had failed to make the investment as Article 4.2 of the Loan Agreement anticipates, the condition under that Article had been triggered and, accordingly, repayment of the loan was due on or before December 29, 2019.[42]  Respondents did not repay the loan on December 29, 2019 or within the five-day grace period following that date (*i.e.*, January 4, 2020), as provided by Article 6.1. Accordingly, an Event of Default occurred.  The occurrence of an Event of Default triggered the interest provision set forth in Article 6.2.

64.     At the request of the Arbitrator, the Claimant submitted an interest calculation updated as of January 5, 2021, indicating total interest of US$410,249.83.  Respondents did not contest Claimant's rights to interests or the calculation that Claimant submitted.[43]

---

[40]   Loan Agreement, Article 6.1, **Exhibit C-14**.

[41]   Loan Agreement, Article 6.2, **Exhibit C-14**.

[42]   Letter from Claimant to Respondents dated October 29, 2019, **Exhibit C-16**.  It appears that Mr. Molina Gil provided copies of wire transfers purported to be from Cadogan.  However, the documents provided did not establish that Cadogan made the payments, as the Loan Agreement requires.  *See* E-mail from Claimant's Counsel to Mr. Molina Gil dated October 3, 2019, **Exhibit C-22**; E-mail from Claimant's Counsel to Mr. Molina Gil dated October 8, 2019, **Exhibit C-23**; Email from Mr. Molina Gil to Claimant's Counsel dated October 9, 2019, **Exhibit C-24**; Bank Transfers, **Exhibits C-17 and C-18**; Email from Mr. Molina Gil to Claimant's Counsel dated October 16, 2019, **Exhibit C-25**.

[43]   Letter from Claimant dated January 5, 2021; Letter from Respondents dated January 4, 2021; Communication from the Arbitrator to the Parties dated December 26, 2020.

Final Award
ICC Arbitration Case 25158/JPA

## C.   Whether the Loan Under the Loan Agreement Is Due and Owing to Claimant

65.   As explained above, the Borrower (*i.e.*, TGV Gone Ltd.) has failed to provide the Lender (*i.e.*, Claimant) with full payment and discharge the Loan and an Event of Default has occurred.  Thus, the Loan under the Loan Agreement is due and owing to Claimant.

66.   It is also undisputed that Mr. Molina Gil is the Guarantor under the Loan Agreement:

**Carlos Javier Molina Gil**
365 West End St.
10024, New York, NY

(hereafter : "*Guarantor* ")

**GUARANTOR:**

Carlos Javier Molina Gil

67.   Moreover, Mr. Molina Gil signed the Loan Agreement on behalf of TGV Gone Ltd. as its Director, President, and Sole Member:

**BORROWER:**

**TGV Gone Ltd**

Name: Carlos Javier Molina Gil
Function: Director/President/Sole Member

68.  Additionally, the   Loan   Agreement   provides   for   joint   and   several liability:

> The Guarantor shall be jointly and severally liable over the full amount of the Loan.  In this regard, at Lender's sole discretion, promissory notes or a similar security, can be asked to be formalized by Borrower and/or the Guarantor on behalf of Lender after the funds of the Loan have been transferred from Lender to Borrower.[44]

69.   This provision is consistent with New York law, which recognizes joint and several liability.  Where multiple parties contractually agree to joint and several liability, the harmed party

---

[44]   Loan Agreement, Article 6.3, **Exhibit C-14**.

17

Final Award
ICC Arbitration Case 25158/JPA

may recover the full amount owed from either party.  A borrower and a guarantor are jointly and severally liable for an obligation where the lender proves the existence of a guaranty, the existence of an underlying debt, and the guarantor's failure to perform under the guaranty.[45]  Each of the elements has been established here: (i) Article 6.3 of the Loan Agreement provides that "[t]he Guarantor shall be jointly and severally liable over the full amount of the Loan;" (ii) the existence of the underlying debt is undisputed; and (iii) neither TGV Gone Ltd., as borrower, nor Molina Gil, as guarantor, has repaid the loan.  Claimant may recover the Loan and interest from either Respondent.

70.     Specifically, Mr. Molina Gil and TGV, jointly and severally, shall pay Mr. Landsmanas Stern: (i) the Loan amount of US$2,200,000 (two million two hundred thousand United States Dollars); (ii) interests in the amount of US$51,910.96 (fifty one thousand nine hundred and ten United States Dollars and ninety six cents), in accordance with Articles 5.1-5.2 of the Loan Agreement; and (iii) interest in the amount of US$358,338.87 (three hundred and fifty eight thousand and three hundred and thirty eight United States Dollars and eighty seven cents), which shall continue to accrue from January 6, 2021, until full payment, at 15% interest per annum to be accrued quarterly in accordance with Article 6.2 of the Loan Agreement.  Claimant's request with respect to costs and interests on them is addressed in Section XII below.

### D.     The Swiss Arbitration

71.     As mentioned above, Mr. Molina Gil advised on July 14, 2020 that "IPG Securities Asset Management SA received arbitration notification in our office in Geneva," and that "[t]hese claims overlap with the ones brought up in this arbitration."[46]  On July 15, 2020, Claimant informed that the Swiss Arbitration against IPG Securities related to the alleged failure to comply with its payment obligations under the IPG Loan Agreement.  Subsequently, Respondents asserted that "[t]he claims against IPG Securities Asset Management SA by Mr. Landsmanas Stern were not disputed and we are waiting for a ruling in favor of Mr. Landsmanas Stern by the Swiss Chambers' Arbitration Institution for the full amount claimed of $2,150,000, inclusive of the $1,425,000 which is part of this claim."[47]

72.     Claimant asserts that the claim in the Swiss Arbitration is independent from and wholly unrelated to his claim against Respondents in this Arbitration.[48]  The Parties have indicated

---

[45]     *See Davimos v. Halle*, 35 A.D.3d 270, 272, 826 N.Y.2d 61, 63 (1st Dep't 2006), Att. 4 to Letter from Claimant dated January 5, 2021.

[46]     E-mail from Respondents to the Arbitrator dated July 14, 2020, **Exhibit C-27**.

[47]     Letter from Respondents dated January 4, 2021.

[48]     Letter from Claimant dated January 5, 2021.

Final Award
ICC Arbitration Case 25158/JPA

that the Swiss Arbitration is still in progress, that the written phase has concluded, and that the court is deliberating whether a hearing will be necessary.[49]

73.     The Arbitrator finds that there is no overlap between this Arbitration and the Swiss Arbitration. The payment obligations under the IPG Loan Agreement (basis for Swiss Arbitration) relate to the Acknowledgement of Debt Agreement (basis for Mexico Arbitration), but not to the Loan Agreement, on which the present dispute is based. Accordingly, no coordination efforts are required to be ordered in this Final Award in connection with the Swiss Arbitration.

## XII.   COSTS

74.     Claimant requests that the Respondents be ordered to pay all costs of this Arbitration, including the legal fees that Claimant has incurred.[50] Claimant asserts that the ICC Rules provide that the arbitrator may allocate the costs of the arbitration, and that factors the tribunal may consider include "the extent to which each party has conducted the arbitration in an expeditious and cost-effective manner."[51]

75.     According to Claimant, Respondents should pay the costs in this case because "Respondents' participation in this Arbitration has been neither expeditious nor cost-effective;" "Molina Gil has conceded that he has no good-faith defense to the claims . . . [but] has forced a protracted proceeding;" and "renege[d] without justification from their agreement to consolidate."[52] Claimant adds that "Respondents failed, however, to submit a Counter-Memorial or otherwise present defenses in the Arbitration," and that "Respondents' bad faith should not be countenanced."[53] In addition, Claimant requests that the Respondents be ordered to pay the New York statutory interest of 9% (CPLR § 5004) on all costs incurred by Claimant.[54]

76.     Claimant represents that it has paid administrative fees to the ICC (inclusive of Respondents' one-half share, which they failed to pay themselves), and it has incurred US$73,388.00 in legal fees to date, solely in connection with this proceeding.[55] The ICC Court has fixed the costs of the arbitration at US$ 72,500.

77.     Respondents have not only recognized the existence of the Loan, but have also referred to Claimant's legal fees. Mr. Molina Gil has asserted: "[e]ven if I were able to afford

---

[49]     *See* Letter from Claimant to the Arbitrator dated January 5, 2021; Letter from Respondents to the Arbitrator dated January 4, 2021.

[50]     Memorial ¶ 26.

[51]     Memorial ¶ 24 (citing ICC Rules, Article 38).

[52]     Memorial ¶¶ 24-26; Reply ¶¶ 4-6.

[53]     Reply ¶ 5.

[54]     Reply ¶ 9.

[55]     Letter from Claimant dated January 5, 2021; *see* Reply ¶ 7.

Final Award
ICC Arbitration Case 25158/JPA

engaging counsel in this matter, it would only be with the purpose of delaying a resolution," and that "I cannot, in good conscious [*sic*], allow the Claimant to incur unnecessary legal expenses in a case where all his claims are accurate and valid."[56]

78.     In turn, Article 38(4) of the ICC Rules provides that "[t]he final award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties."  The costs of the arbitration "include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court . . .  and the reasonable legal and other costs incurred by the parties for the arbitration."[57]  Moreover, Article 38(5) of the ICC Rules states that "[i]n making decisions as to costs, the arbitral tribunal may take into account such circumstances as it considers relevant, including the extent to which each party has conducted the arbitration in an expeditious and cost-effective manner."

79.     In this case, Respondents participated in the arbitral proceeding.  Among other interventions, Mr. Molina Gil confirmed at the Case Management Conference that he was participating on his own behalf as well as on behalf of TGV, and admitted that Claimant's "claims are accurate and valid."[58]  Under the circumstances, it is appropriate to grant Claimant's legal and other costs, which appear to be reasonable in the context of the proceeding.  Consequently, Respondents shall bear the costs of the arbitration and Claimant's legal fees.

80.     In addition, the Arbitrator finds that New York statutory interest of 9% should accrue on costs starting 30 days after the date of the Award until full payment.

---

[56]   Letter from Molina Gil to the Arbitrator dated July 6, 2020.

[57]   ICC Rule 38(1).

[58]   Letter from Molina Gil to the Arbitrator dated July 6, 2020.

Final Award
ICC Arbitration Case 25158/JPA

## XIII. DISPOSITION

81.     Having considered the submissions and the evidence that the Parties presented and for the reasons set out above, the Arbitrator hereby DECIDES and ORDERS as follows:

    a.  the Arbitrator has jurisdiction over this dispute pursuant to Article 9.2 of the Loan Agreement;

    b.  the Loan Agreement is in default and the loan is due and owing to Jack Landsmanas Stern;

    c.  Mr. Carlos Javier Molina Gil (Mexico) and TGV GONE LTD. (Bahamas), jointly and severally, shall pay Mr. Jack Landsmanas Stern:

        i.  the Loan amount of US\$2,200,000 (two million two hundred thousand United States Dollars);

        ii.  interests in the amount of US\$51,910.96 (fifty one thousand nine hundred and ten United States Dollars and ninety six cents), in accordance with Articles 5.1-5.2 of the Loan Agreement;

        iii.  interest in the amount of US\$358,338.87 (three hundred and fifty eight thousand and three hundred and thirty eight United States Dollars and eighty seven cents), which shall continue to accrue from January 6, 2021, until full payment, at 15% interest per annum to be accrued quarterly in accordance with Article 6.2 of the Loan Agreement; and

        iv.  costs of the arbitration in the amount of US\$145,888 (one hundred and forty-eight thousand and three hundred and eighty eight United States Dollars), which correspond to US\$72,500.00 fixed by the ICC Court and US\$73,388.00 for legal expenses, plus 9% annual interest, which shall accrue starting 30 days after the date of the Award until full payment.

    d.  Any other claim is hereby denied.

Place of arbitration: New York, NY (USA)

Signed by the Sole Arbitrator

March 19, 2021

21

Final Award
ICC Arbitration Case 25158/JPA

_____
Signature Date

_____
Silvia M. Marchili